A. C. Engineering Corporation v. Commissioner.
A. C. Engineering Corp. v. Commissioner
Docket No. 60543.
United States Tax Court
T.C. Memo 1958-147; 1958 Tax Ct. Memo LEXIS 80; 17 T.C.M. (CCH) 737; T.C.M. (RIA) 58147; July 30, 1958
*80 For the taxable year 1952 petitioner corporation claimed substantial deductions for entertainment and travel expenses allegedly incurred by its president and for salary and bonus compensation of its officers. Held, on the facts, petitioner's deductions for entertainment and travel expense of its president did not exceed the amount allowed by respondent. The amount of deduction allowable for compensation of its officers determined. Held further, petitioner is not entitled to a deduction for the taxable year 1952 for additional Wisconsin state taxes assessed against petitioner in 1957 by the State of Wisconsin. Held further, at least part of the deficiency is due to negligence or intentional disregard of rules and regulations within the meaning of section 293(a), Internal Revenue Code of 1939. Gordon R. Davis, Esq., 207 East Michigan Street, Milwaukee, Wis., for the petitioner, Thomas J. Donnelly, Jr., Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined a deficiency in the income tax of petitioner and an addition to tax as follows: Addition to Tax
Year
Deficiency
Sec. 293(a)
1952
$65,030.47
$3,251.52
*81 By amendment to his answer respondent claims an increased deficiency in the amount of $10,279.75 and an increased addition to tax under section 293(a) of the Internal Revenue Code of 1939 in the amount of $513.99 for the taxable year 1952. By amendment to its petition, petitioner claims an additional deduction for state taxes for the taxable year 1952. Petitioner concedes that income from sales adjustment in the amount of $19,236.16 as set forth in the notice of deficiency is a proper adjustment for the reason that such sales were completed and the petitioner was entitled to payment therefor before the close of the taxable year 1952. Petitioner further concedes the following adjustments made by respondent in the notice of deficiency as being improper deductions from petitioner's income for the taxable years 1952: Welfare Fund
$512.50
Depreciation
376.00
Real Estate Tax
23.07
Personal Property Tax
75.91
Advertising Expenses
48.31
The parties have stipulated that the following adjustments made by respondent in the notice of deficiency to petitioner's net income as disclosed by its return for the taxable year 1952 have been properly disallowed by respondent *82 for the reason that such claimed expenses represent the personal expenses of petitioner's stockholders, Conrad and Catherine Sickinger, and do not represent deductible expenses of petitioner from its income for the taxable year 1952: Purchases
$ 794.92
Subcontracting Expense
3,695.35
Maintenance and Repairs
1,055.94
Total
$5,546.21 It was further stipulated, however, that this stipulation as to purchases, subcontracting expense and maintenance and repairs is not to preclude petitioner from maintaining that such expenses are allowable as bonuses to Conrad and Catherine if such should be determined by the Court. The issues for decision are: (1) Whether petitioner's allowable deductions for "selling and traveling expense" and for "entertainment, experimental and promotional work" exceed the sum of $20,658.25 allowed by respondent for the taxable year 1952; (2) Whether petitioner's allowable deductions for compensation to officers exceed the following amounts for the taxable year 1952: Conrad Sickinger
$23,660.00
Catherine Sickinger
5,000.00
Theresa Janke
None
(3) Whether petitioner is entitled to deductions for the taxable year 1952 *83 for an additional assessment of normal income tax in the amount of $7,145.16, for teachers' retirement fund surtax in the amount of $1,192.40, and for privilege dividend tax in the amount of $760.74, made in 1957 against petitioner by the Wisconsin Department of Taxation for the taxable year 1952; (4) Whether any part of the deficiency is due to negligence or intentional disregard of rules and regulations under section 293 (a) of the Internal Revenue Code of 1939. Findings of Fact Petitioner is a Wisconsin corporation incorporated under the laws of the State of Wisconsin in the year 1946. Petitioner filed a Federal corporation income tax return for the taxable year 1952 on March 16, 1953, with the district director of internal revenue, Milwaukee, Wisconsin. The return disclosed a total tax liability of $31,671.04. Petitioner maintains its books and records and filed its income tax returns on an accrual basis of accounting. During the taxable year 1952 petitioner had 500 shares of common no par stock authorized, with 300 shares issued and outstanding. Of these 300 shares, 149 shares each were owned by Conrad Sickinger (hereinafter referred to as Conrad) and Catherine Sickinger *84 (hereinafter referred to as Catherine). The remaining two shares were owned by their daughter, Theresa Janke. During the taxable year 1952 Conrad was president of petitioner, Theresa was vicepresident, and Catherine was secretary-treasurer. Conrad, Catherine and Theresa were the only directors of petitioner during the taxable year 1952. Born in Germany, Conrad came to the United States in 1929 and became a naturalized citizen five years later. Prior to the organization of petitioner in 1946, he had no sales experience but had worked for a tool and die works as a tool maker where he did nothing but operate machines and make tools and dies. As president of petitioner, Conrad supervised petitioner's fifteen employees. He personally performed most of the executive, administrative and sales functions incidental to the operation of petitioner's business. On its 1952 Federal income tax return petitioner claimed deductions in the amount of $29,732.19 for "entertainment, experimental and promotional work" and deductions in the amount of $9,450 for "selling and traveling expense." The total amount of the deductions claimed for these alleged expenditures in 1952 was $39,182.19. Petitioner's *85 accountant, Henry C. DeVillers, was responsible for posting petitioner's accounts to its books. He was not responsible for classifying the accounts. During 1952 he kept a ledger entitled "entertainment, experimental and promotional work." Entries to this ledger were made by DeVillers based upon notations made on check stubs by Conrad or his secretary. The ledger reveals that checks made payable either to cash or to Conrad in the total amount of $20,203.50 were written on petitioner's bank account. The ledger also contains entries relating to checks made payable to specific payees other than cash or Conrad in the total amount of $9,528.69 during the year 1952. The ledger shows the dates of the checks, the check numbers, payees and endorsers. The checks payable to specific payees were primarily made out payable to butcher shops, beer depots, liquor dealers and restaurants. Conrad's sales technique was to entertain persons active in the tool and die industry in order to develop petitioner's sales volume. Several times a week Conrad took customers of petitioner to lunch. On these occasions he would usually go to lunch with one individual and at a restaurant would meet other people, including *86 competitors and friends. Conrad usually paid the luncheon bill, including drinks, for the entire crowd. On other occasions Conrad would take customers of petitioner out for dinner and evening entertainment. Sometimes competitors of petitioner and friends of Conrad would also join the evening party. Conrad normally paid the bill for all of the members of the party. Most of the customers of petitioner who were entertained by Conrad would have given business to petitioner in the absence of such entertainment. Petitioner maintained a ledger entitled "selling and traveling expense." Entries to this ledger were made by petitioner's accountant based upon notations made on check stubs by Conrad or his secretary. For the year 1952 the ledger reflected that checks made payable either to cash or to Conrad in the total amount of $9,450 were written on petitioner's bank account. The ledger reflected the dates of such checks, the check numbers, the payees and endorsers. The "selling and traveling expense" ledger was used to record Conrad's travel and entertainment expense while on the road. Conrad traveled approximately twice a month during a year and these trips were normally of two days duration. *87 Checks for Conrad's travel expenses were usually issued for $100. Conrad made approximately 24 trips during 1952. Petitioner's accountant was never given any vouchers or other information in support of the "entertainment, experimental and promotional work" ledger or in support of the "selling and traveling expense" ledger. During the years 1947 to 1952, inclusive, petitioner's gross sales were as follows: 1947
$ 64,740.70
1948
130,904.23
1949
102,186.31
1950
167,948.84
1951
243,577.96
1952
420,338.12 There was no significant increase in the physical productive capacity of petitioner during the year 1952. During the taxable year 1952 it was the custom of the tool and die industry to compensate sales personnel operating on a commission basis at the rate of 10 to 15 per cent of the sales volume developed through their efforts. On its tax return for 1952 petitioner claimed deductions for compensation of officers as follows: Conrad
$38,345.37
Catherine
32,185.36
Theresa
20,000.00 The salary and bonus payments deducted by petitioner were computed on the books of petitioner as follows: Conrad Sickinger: Regular payments to Conrad Sickiner charged to officer's salary account
$ 6,160.00
Personal expenses of Conrad Sickinger charged to officer's bonus account
14,685.37
Year end bonus
17,500.00
Total payment of salary and bonus
$38,345.37
Catherine Sickinger: Personal expenses of Catherine Sickinger charged to officer's bonus account
$14,685.36
Year end bonus
17,500.00
Total
$32,185.36
Theresa Janke: Year end bonus to Theresa Janke charged to officer's salary expense paid by
check #8850 dated March 11, 1953
$20,000.00
Total
$20,000.00
*88 During the taxable year 1952 Conrad was president of petitioner with an authorized salary of $6,160 per annum. In addition he was authorized to receive $200 per week to be used for travel, entertainment and promotional expenses on behalf of petitioner. Theresa and Catherine received no authorized salaries from petitioner. During 1952 petitioner paid personal expenses of Conrad and Catherine in the total amount of $29,370.73. These expenditures were charged to a ledger account entitled "Catherine & Conrad Sickinger bonus account." The amount of $29,370.73 was included in the deduction claimed by petitioner on its 1952 Federal income tax return for officers' compensation and allocated as follows: $14,685.37 to Conrad and $14,685.36 to Catherine. Some time during the period December 31, 1952 to January 14, 1953, petitioner's accountant, DeVillers, prepared audit working papers prior to filing petitioner's 1952 Federal income tax return. Petitioner's net profit and taxable income as disclosed on the working papers amounted to $113,230.93. DeVillers showed the working papers to Conrad and informed him that petitioner's taxable income for the year 1952 was $113,230.93 according to *89 petitioner's books. Thereupon Conrad stated: "If we have to pay tax on that money, we'll go broke." Later he said "We'll have to do something about it. I'll have to declare a bonus." When DeVillers asked if there had been a meeting of petitioner's directors authorizing bonuses Conrad replied, "Well, I'm the owner of the corporation and I do as I please with my money. So what we will have to do is declare a bonus of $35,000 - $17,500 for myself and $17,500 for Mrs. Sickinger." Subsequently Conrad further stated, "I think I'll give my daughter $20,000 for a bonus." In February 1953, Conrad instructed DeVillers to make necessary entries on petitioner's books which would record as accrued expenses for the taxable year 1952 a $17,500 bonus to himself, $17,500 to Catherine and a $20,000 bonus to Theresa. DeVillers was told to claim such bonuses as part of the deduction for compensation of officers on petitioner's 1952 Federal income tax return. DeVillers made a supplementary entry to the balance sheet and profit and loss statement of petitioner and recorded the bonuses as accrued expenses for the taxable year 1952. DeVillers also entered the bonuses on petitioner's records by charging *90 the $17,500 bonuses of Conrad and Catherine to the ledger account entitled "Catherine & Conrad Sickinger bonus account" and by charging the $20,000 bonus to Theresa to the ledger account entitled "officer's salary." Petitioner has never paid the bonuses of $17,500 each claimed as a deduction by petitioner on its 1952 Federal income tax return for compensation of Conrad and Catherine. The bonus of $20,000 claimed as compensation to Theresa was paid by check dated March 11, 1953. The minutes of the meetings of petitioner's directors with respect to the payment of salaries and bonuses to Conrad and Catherine for the year 1952 are as follows: "MINUTES OF "ANNUAL MEETING OF DIRECTORS "Milwaukee, Wisconsin
"February , 1952 "Minutes of the Annual Meeting of Directors of the A-C Engineering Corporation, a Wisconsin corporation, held at the offices of said corporation at 2809 West Carmen Avenue, Milwaukee 9, Wisconsin at 10:00 A.M., on the… day of February, 1952, pursuant to the following waiver of notice and call to said meeting, to wit: "We, the undersigned, being all of the directors of A-C Engineering Corporation, hereby jointly and severally waive notice of the call of *91 the annual meeting of directors of said corporation held at the offices of said corporation on the… day of February, 1952, at 10:00 A.M., and we consent to the transaction of any and all business that may have become before said meeting without further notice. "Dated at Milwaukee, Wisconsin, this… day of August, 1955. "/s/ Conrad Sickinger, Conrad Sickinger "/s/ Catherine Sickinger, Catherine Sickinger "/s/ Theresa Janke, Theresa Janke "The meeting was called to order by Conrad Sickinger, President and these minutes were recorded by Catherine Sickinger, Secretary. The attention of the meeting was then directed to the matter of compensation for corporate officers and in particular the matter of promotional and entertainment expenses incurred by this corporation. It was pointed out that due to the highly competitive nature of the economic field in which this corporation was functioning and the well established reputation of many similar organizations that extraordinary efforts in the promotional field were indicated. Whereupon on motion duly made, seconded and unanimously carried, it was, "RESOLVED: That Conrad Sickinger be elected President of this corporation for the *92 ensuing operating period and be paid a salary of Six Thousand One Hundred Sixty Dollars ($6,160) per annum; that Theresa Janke be elected Vice President of the corporation; and that Catherine Sickinger be elected Secretary-Treasurer of this corporation and be paid a salary of Dollars per month. "And on motion duly made, seconded and unanimously carried, it was, "FURTHER RESOLVED: That Conrad Sickinger, President of this corporation should be and he hereby is awarded expense allowance of not less than Two Hundred Dollars ( $200), for the ensuing operating period, per week which sums shall be exclusively disbursed in connection with entertainment of customers of this corporation and other promotional efforts on behalf of this corporation. Provided further that further sums awarded to Conrad Sickinger upon demand it being provided in both instances, however, that said Conrad Sickinger shall render a strict accounting of all monies disbursed in accordance with this resolution and that all monies awarded pursuant to this resolution which are not adequately accounted for shall be applied against the salary and/or bonus, if any, to which the said Conrad Sickinger shall become entitled. *93 "And after thorough discussion in which recognition was given to the extraordinary services heretofore rendered by Conrad Sickinger, and his wife, Catherine Sickinger and in anticipation of future efforts, on motion duly made and seconded, it was: "RESOLVED: That this Board of Directors shall meet toward the close of the current operating period and determine the amount of bonus to be declared in favor of Conrad and Catherine Sickinger which shall be commensurate with the reasonable value of their services as officers of this corporation. "There being no other or further business to come before said meeting, the same, upon motion duly made, seconded and unanimously carried, was adjourned. "/s/ Catherine Sickinger, Catherine Sickinger, Sec'y. "ATTEST: /s/ Conrad Sickinger, Conrad Sickinger /s/ Theresa Janke, Theresa Janke "MINUTES OF "SPECIAL MEETING OF DIRECTORS "Milwaukee, Wisconsin
"December , 1952 "Minutes of the Special Meeting of Directors of the A-C Engineering Corporation, a Wisconsin corporation, held at the office of said corporation at 2809 West Carmen Avenue, Milwaukee 9, Wisconsin at 10:00 A.M., on the day of December, 1952, pursuant to the following *94 waiver of notice and call to said meeting, to-wit: "We, the undersigned, being all of the directors of A-C Engineering Corporation, hereby jointly and severally waive notice of the call of the annual meeting of directors of said corporation held at the offices of said corporation on the day of December, 1952, at 10:00 o'clock A.M. and we consent to the transaction of any and all business that may have become before said meeting without further notice. "Dated at Milwaukee, Wisconsin, this day of August, 1955. "/s/ Conrad Sickinger, Conrad Sickinger "/s/ Catherine Sickinger, Catherine Sickinger "/s/ Theresa Janke, Theresa Janke "The meeting was called to order by Conrad Sickinger, President, and these minutes were recorded by Catherine Sickinger, Secretary. The attention of the meeting was addressed to the extraordinary efforts exerted by both Conrad and Catherine Sickinger on behalf of this corporation during the current calendar year and it was noted that the services of said individuals were jointly and individually considerably in excess of the modest salary heretofore provided. Thereupon the attention of the meeting was directed to the magnitude of compensation enjoyed by *95 comparable personnel among the competitors of this corporation. After a thorough discussion emphasizing in particular the growth of this corporation business and the relative efficiency of production enjoyed, it was, "RESOLVED: That a bonus be paid to Conrad and Catherine Sickinger in the amount of Thirty-five Thousand Dollars ($35,000) primarily in recognition of the extraordinary services of Conrad Sickinger but also in recognition of those rendered by Catherine Sickinger and it was provided further that Conrad Sickinger would best be qualified to ascertain the proportionate value of services rendered by Catherine Sickinger on behalf of this corporation and he should be and he hereby is authorized to apportion the bonus herein declared between himself and Catherine Sickinger as he best believes fit and proper. "There being no other or further business to come before said meeting, the same, upon motion duly made, seconded and unanimously carried, was adjourned. "/s/ Catherine Sickinger, Catherine Sickinger, Secretary "ATTEST: /s/ Conrad Sickinger, Conrad Sickinger /s/ Theresa Janke, Theresa Janke" Theresa rendered no regular services to petitioner during 1952. She appeared *96 at petitioner's office occasionally on Saturdays but had no regular duties. Catherine occasionally visited petitioner's office to make inquiries into petitioner's affairs. She did not, however, have any regular duties to perform and performed none for petitioner during the year 1952. By letters dated September 13, 1957, the Wisconsin Department of Taxation notified petitioner of assessment for the year 1952 of additional income tax in the amount of $7,145.16, teachers' retirement fund surtax in the amount of $1,192.40 and privilege dividend tax in the amount of $760.74. On October 12, 1957, petitioner waived protest of the assessment made by the State of Wisconsin for additional normal income tax and additional teachers' retirement fund surtax for the year 1952. The deductions claimed by petitioner on its 1952 Wisconsin income tax return for officers' salaries, travel and entertainment expenses were in the same amounts as the deductions claimed for such items on the 1952 Federal income tax return, and the additional taxes imposed by the Wisconsin Department of Taxation for the year 1952 were based on the disallowance of the same officers' salaries, travel and entertainment expenses *97 as are involved herein. None of the additional Wisconsin State taxes for the year 1952 were accrued or claimed as a deduction by petitioner on its Federal income tax return for the year 1952. At least part of the deficiency was due to negligence or intentional disregard of rules and regulations. Opinion Respondent determined that petitioner's allowable deductions for "entertainment, experimental and promotional work" and "selling and traveling expense" in 1952 did not exceed the sum of $20,658.25. On its 1952 Federal income tax return petitioner deducted the amount of $29,732.19 for "entertainment, experimental and promotional work" and the amount of $9,450 for "selling and traveling expense." Petitioner contends that these alleged expenditures in the total amount of $39,182.19 are deductible as ordinary and necessary business expenses for the taxable year 1952. The applicable statute, section 23(a)(1)(A) of the Internal Revenue Code of 1939 is set forth in the margin. [1]
*98 Petitioner introduced in evidence a group of checks totaling $39,182.19 and ledgers on which these checks were charged. Checks in the amount of $20,203.50, which checks were made payable either to cash or to Conrad, were charged to a ledger account entitled "entertainment, experimental and promotional work." This ledger account also contains entries relating to checks made payable to specific payees such as restaurants, liquor dealers and the like in the total amount of $9,528.69. The ledger account entitled "selling and traveling expense" reflects that checks made payable to cash or to Conrad in the total amount of $9,450 were written on petitioner's bank account during 1952. However, petitioner did not place in evidence any detailed records or other information relating to the names or other identification of persons entertained, itemized statements of expenses incurred by Conrad during his business trips or any other information which might establish the business purpose of any of the claimed expenditures. In making up the ledgers, petitioner's accountant was not given any corroborating information in support of the entertainment and travel expense items claimed as deductions *99 for 1952. Despite the lack of documentary evidence as to the business character of the deductions claimed for entertainment and travel expenses, petitioner insists that the testimony of Conrad and other witnesses clearly establishes that the total amount of $39,182.19 represents deductible business expenses. However, this testimony is not persuasive. Conrad did not identify with particularity the specific occasions on which he entertained or the names and business relationship of the persons entertained. He did mention the names of several restaurants which he frequented but failed to produce corroborating evidence as to all the amounts he allegedly spent there. Furthermore, Conrad's testimony did not establish that all of the entertainment expenses he incurred bore a proximate relationship to his tool and die business. He admitted that frequently friends and competitors were included in his entertainment activities, and that when he entertained in the evening his wife frequently accompanied him. Obviously, Conrad's entertainment expenses for himself, his wife, and his friends are his personal expenses and not deductible by petitioner. Richard A. Sutter, 21 T.C. 170; *100 James Schulz, 16 T.C. 401. Petitioner also bears the burden of showing that expenses not attributable to Conrad's personal entertainment were related to expected business benefits. The record discloses that Conrad personally performed most of the sales functions incidental to the operation of petitioner's business. Also, respondent concedes that Conrad entertained frequently in order to develop petitioner's sales volume. Conrad testified that he entertained customers, friends and business competitors for lunch on the average of six times per week and estimated that the average cost of a lunch $25was. He also testified that he entertained in the evening approximately two times per week and estimated that the average cost of an evening's entertainment was approximately $60. The number of people involved in these gatherings ranged from two or more at lunch to twelve or more in the evening. Using Conrad's own estimate, petitioner's expenditures for entertainment would amount to an average of $270 per week or a total of $14,040 for the year 1952. This amount is less than one-half of the $29,732.19 claimed by petitioner on its tax return as a deduction for entertainment expense. *101 Other testimony in the record refutes petitioner's contention that the entire amount of such claimed expense was ordinary and necessary business expense. Two witnesses for petitioner testified they were customers of petitioner and that Conrad frequently took them to lunch and occasionally took them out to dinner during the year 1952. They stated, however, that on most of these occasions they were joined by others who may or may not have been engaged in the tool and die business. Nowhere does it appear that all persons entertained by Conrad had business dealings with petitioner. The testimony of these and other witnesses indicates that Conrad enjoyed the role of "free spender." The proprietor of a bowling alley testified that Conrad paid the bill for a large crowd at that establishment approximately once a month during the year 1952. This witness indicated that many people would join Conrad's party, order expensive dinners, and in general enjoy his hospitality merely because everyone knew that Conrad would pick up the check. It does not appear that the expenses incurred by Conrad on these occasions were related in any way to petitioner's business. With respect to the deduction *102 for travel expenses, Conrad testified he took business trips on an average of twice a month and that the average duration of each trip was two days. It accordingly appears from Conrad's testimony that he took approximately 24 business trips during 1952 of a total duration of 48 days. Thus petitioner's claimed deduction of $9,450 for travel expenses incurred by Conrad on these trips amounts to approximately $200 per day. However, petitioner has offered no evidence to support its claim that Conrad spent these unusually large sums for transportation, meals and lodging while away from home in connection with petitioner's business. No evidence appears as to where Conrad went on business trips, the hotels in which he stayed, costs of transportation, amounts spent for lodging, food and incidentals, or other information of a similar nature. Petitioner's only evidence consists of canceled checks in the total amount claimed, which checks were charged to a "selling and traveling" expense account. Clearly, in the absence of more detailed evidence petitioner has failed to prove that Conrad incurred deductible travel expenses of approximately $200 per day for 48 days during the year 1952. Petitioner *103 points to its increased sales during 1952 in support of its argument that by spending large sums for entertainment Conrad was responsible primarily for this increase in production. It does not appear, however, that petitioner's customers were prompted to increase their orders as a result of Conrad's entertaining. Two of petitioner's customers who were frequently entertained by Conrad at lunch or dinner testified they would have placed orders with petitioner whether or not Conrad had entertained them. Furthermore, the year 1952 was during the Korean hostilities and it is quite possible that much of petitioner's increased business was a direct result of that situation. Certainly Conrad was responsible to some degree for petitioner's increased sales, and his entertainment policies undoubtedly contributed to the increase in business. However, respondent has allowed the sum of $20,658.25 as a deduction for entertainment and travel expense for the year 1952. Considering all the circumstances and in the absence of any records or documentary evidence substantiating Conrad's testimony that all of the checks charged to entertainment and travel expense represented business expenditures, the amount *104 allowed by respondent appears to be quite generous. Accordingly we hold that petitioner has failed to establish that it is entitled to deductions for entertainment and travel expenses in the year 1952 in excess of the sum of $20,658.25, the amount allowed by respondent. On its tax return for 1952 petitioner claimed deductions for compensation to Conrad in the amount of $38,345.37, to Catherine in the amount of $32,185.36, and to Theresa in the amount of $20,000. These amounts were computed by petitioner on its books as follows: Conrad Sickinger: Regular payments to Conrad Sickinger charged to officer's salary account
$ 6,160.00
Personal expenses of Conrad Sickinger charged to officer's bonus account
14,685.37
Year end bonus
17,500.00
Total Payment of salary and bonus
$38,345.37
Catherine Sickinger: Personal expenses of Catherine Sickinger charged to officer's bonus account
$14,685.36
Year end bonus
17,500.00
Total
$32,185.36
Theresa Janke: Year end bonus to Theresa Janke charged to officer's salary expense paid by
check #8850 dated March 11, 1953
$20,000.00
Total
$20,000.00
Respondent disallowed the $14,685.36 personal expense of Catherine *105 and also disallowed $12,500 of the $17,500 bonus claimed as compensation to Catherine. Respondent allowed the amount of $5,000 as a deduction for compensation to Catherine for 1952. Respondent disallowed the entire $20,000 bonus claimed by petitioner as compensation to Theresa. By amended answer, respondent claimed an increased deficiency and addition to tax on the ground that the $14,685.37 personal expenses of Conrad were not authorized as salary by petitioner and further claimed that petitioner's allowable deduction for compensation to Conrad was not in excess of $23,660 for the taxable year 1952. Petitioner has the burden of overcoming the presumptive correctness of respondent's determinations as set forth in the notice of deficiency. Respondent, however, has the burden with respect to the increases in deficiency and addition to tax claimed in his amended answer. Rule 32, Rules of Practice, Tax Court of the United States. Petitioner's observation, on brief, that considerable confusion exists in the record is appropriate not only to the issue relating to the deductions claimed for entertainment and travel expenses discussed above, but also to the issue relating to the deductions *106 claimed for salaries and bonuses paid to petitioner's officers and stockholders. With respect to the latter issue, petitioner has aptly characterized the situation as "petitioner's bonus 'jungle'". It might be added that the arguments presented on briefs by both of the parties are also somewhat confusing and difficult to understand. Respondent apparently takes the position that there was no authorization for or accrual of any of the bonuses claimed as deductions by petitioner, notwithstanding which he has allowed petitioner a deduction for compensation paid to Conrad in the total amount of $23,660, of which $6,160 represents salary and $17,500 is apparently derived from the year-end bonus to Conrad. Respondent also contends that Catherine had no regular duties and performed no services for petitioner and that there was no authorization for or accrual of any bonus to her, notwithstanding which he had allowed petitioner a deduction in the amount of $5,000 for compensation to Catherine and disallowed only $12,500 of the so-called $17,500 bonus to Catherine. On the other hand petitioner apparently does not question the disallowance by respondent of $12,500 of the $17,500 "bonus" claimed *107 as compensation to Catherine, or the disallowance of the entire $20,000 "bonus" claimed as compensation to Theresa, as such. Petitioner also apparently concedes that it is not entitled to deduct both the personal expenses of Conrad and Catherine, charged on its books to "officer's bonus account," and the $35,000 designated as "year-end bonus." Petitioner argues, however, that a salary in the amount of $6,160 and a "bonus" in the amount of $50,000 was duly authorized in favor of its president, Conrad Sickinger, for services rendered on its behalf during the year 1952, and that such total compensation in the amount of $56,160 was a reasonable, necessary and ordinary expense of the corporation. Petitioner arrives at the $50,000 "bonus" figure in the following manner. First, it accepts respondent's allowance of $5,000 of the $17,500 "bonus" to Catherine as an appropriate deduction for compensation to Catherine. The remaining $12,500 of the "bonus" to Catherine is added to the $17,500 "bonus" to Conrad and the $20,000 "bonus" to Theresa to arrive at the $50,000 "bonus" which petitioner says was in fact authorized to be paid to Conrad. The allocation on petitioner's books of $17,500 in *108 bonus to Catherine is referred to as an "empty gesture" made "in the nature of a psychological 'peace offering' to his spouse." The allocation on petitioner's books of $20,000 in bonus to Theresa is explained on brief by petitioner as being due to a mistake or misunderstanding on the part of petitioner's accountant. This $20,000, it is claimed, was in fact additional "bonus" authorized by petitioner's Board of Directors on December 28, 1952 to be paid to Conrad but made payable to Theresa as a gift from Conrad to his daughter. As authorization for such bonus, petitioner refers (1) to a meeting of its Board of Directors in February 1952, at which time it is claimed the Board of Directors authorized payment of a salary to Conrad in the amount of $6,160 and a bonus to Conrad and Catherine, the amount of which was to be established toward the close of the current operating period, and (2) to a meeting of its Board of Directors on December 15, 1952, at which time it authorized payment of a bonus in the amount of $35,000, as well as (3) to a meeting on December 28, 1952, previously referred to herein, at which an additional $20,000 bonus to Conrad is claimed to have been authorized. *109 We are unable to agree entirely with the contentions made by either of the parties. Preliminarily, although the concessions made by petitioner on brief with respect to the disallowance of $12,500 in "bonus" to Catherine and $20,000 in "bonus" to Theresa renders further discussion thereof unnecessary, since, as we have found, neither Catherine nor Theresa performed any services for petitioner, it is obvious petitioner is not entitled to a deduction of such amounts as compensation paid to either of them and that respondent's disallowance thereof was proper. Returning to petitioner's contentions, the evidence is not sufficient, in our opinion, to establish that any definite action was taken by petitioner's Board of Directors during the year 1952 authorizing the payment of bonuses in the amount claimed by petitioner. The testimony of Conrad and Catherine, as well as that of Frances Worzala, Conrad's secretary, as to what took place at petitioner's Board meetings was vague, indefinite and uncertain, and the minutes of such meetings, prepared in 1955, after the investigation in this case was begun, are entitled to little or no consideration. Moreover, such testimony and exhibits are *110 directly in conflict with the testimony of the accountant, DeVillers, who posted petitioner's accounts and prepared its 1952 income tax return. DeVillers' testimony indicates that the decision to declare a bonus in the amount of $17,500 each to Conrad and Catherine, and in the amount of $20,000 to Theresa was made by Conrad after the close of the taxable year and only after having been shown audit work papers prepared by DeVillers disclosing substantial taxable income of the petitioner for the year 1952. Entries on the work papers (Respondent's Exhibit K), as well as on petitioner's ledger account entitled "Catherine & Conrad Sickinger's Bonus Account" (Joint Exhibits 2-B and 9-F) lend support to DeVillers' testimony. On its income tax return for 1952 petitioner claimed deductions in the total amount of $29,370.73 for personal expenses of Catherine and Conrad charged on its books to "Officer's Bonus Account." It also claimed deductions as business expenses for certain purchases, sub-contracting expense, and maintenance and repairs, in the total amount of $5,546.21. As heretofore indicated, petitioner has stipulated that the $5,546.21 was properly disallowed by respondent as a business *111 expense deduction. Petitioner says, however, that such amount represents personal expenses of Conrad and Catherine which, when added to the $29,370.73 mentioned above, amounts to "approximately $35,000" and that it was this sum which was "ratified" by the Board of Directors at its meeting of December 15, 1952 as part of the bonus due its officers. We think there is some merit to petitioner's contention that the personal expenses in the total amount of $29,370.73, charged on its books to the account "Catherine & Conrad Sickinger's Bonus Account" represent and were in fact intended as a "bonus" to Conrad for services rendered by him during the year 1952. Entries to this account were regularly made throughout the year and apparently followed a similar practice during the preceding year 1951. This is an indication that petitioner intended the payment of a bonus to Conrad during the year 1952. The smallness of the fixed salary paid Conrad also lends support to this conclusion. Under such circumstances, the absence of a formal resolution or vote of the Board of Directors is considered immaterial. See 5 Fletcher Cyclopedia Corporations, sections 2114, 2115, and 2131. We are also convinced *112 that the entire amount of such personal expenses ($29,370.73) was intended as compensation for the services rendered by Conrad, notwithstanding Catherine's name appears in the heading of such account and it was reported on the return in equal amounts as bonus paid to Conrad and Catherine. As previously indicated, Catherine had no regular duties and performed no services to petitioner. We are satisfied, as testified to by Conrad, that this was a mere "peace" gesture on the part of Conrad to his wife and it was immaterial to him since he was responsible for his wife's personal expenses in any event. We do not agree, however, that the $5,546.21 should be included in the amount of bonus allowable as a deduction to petitioner. The items making up this amount were never carried on petitioner's books in the above-mentioned bonus account and, on its return, petitioner claimed deductions therefor as business expenses and not as compensation paid to its officers. Considering the fact that Conrad performed most of the administrative and sales functions of the petitioner and that much of its business success was due to his efforts, the payment to him of a bonus in the amount of $29,370.73 *113 in addition to a regular salary in the amount of $6,160 is not considered unreasonable. In summary, we do not disturb respondent's allowance of a deduction in the amount of $5,000 as compensation paid to Catherine during the year 1952. We hold, however, that petitioner is entitled to a deduction in the total amount of $35,530.73 ($6,160 salary plus $29,370.73 bonus) for compensation paid to Conrad, rather than $23,660 as contended by respondent. The next issue to be determined is whether petitioner is entitled to deductions for the taxable year 1952 for additional assessments of state taxes for that year. Petitioner claimed deductions on its Wisconsin state income tax return for 1952 for officers' salaries, travel, and entertainment expenses in the same amounts as were claimed as deductions by it on its Federal income tax return for 1952. As the result of an audit thereof, the Wisconsin Department of Taxation, by letters dated September 13, 1957, notified petitioner of additional assessments in the total amount of $9,098.30 for 1952. Such additional assessments were based on the disallowance of officers' salaries, travel, and entertainment expenses in the same amounts as are *114 involved in the present proceeding. By letter dated October 12, 1957, petitioner notified the Wisconsin Department of Taxation that it waived protest of such additional state tax assessments for 1952. By amendment to its petition filed at the time of the hearing herein on October 30, 1957, petitioner claims the additional state tax assessment as an accrued expense deduction for the taxable year 1952. Substantially the same issue as is involved herein has previously been dealt with by this Court in Gunderson Bros. Engineering Corp., 16 T.C. 118 (January 18, 1951). In that case an accrual basis taxpayer claimed a deduction on its state and Federal returns filed for the fiscal year 1944, which was later determined not to be allowable. The taxpayer did not accrue the added state tax on its books which would otherwise have been due if such unallowable deduction had not been claimed, and did not admit its liability for the added state tax until some years later. This Court held that the added tax resulting from the subsequent elimination of the deduction was accruable and deductible only in the taxable year in which the taxpayer finally recognized and admitted its liability *115 for such tax. In so holding we stated: "The right to accrue a liability for tax comes with the occurrence of all the events which fix the amount of the tax and determine the liability of the taxpayer to pay it. United States v. Anderson, 269 U.S. 422; see G.C.M. No. 25298, 1947-2 C.B. 39. In cases involving taxpayers who contest the imposition of a tax by court action, it has been consistently held that the right to accrue such expense must be postponed until such time as the taxpayer's liability for the tax and the amount thereof has been finally determined. Dixie Pine Products Co. v. Commissioner, supra; Security Flour Mills Co. v. Commissioner, supra. However, it is not necessary that a taxpayer institute legal proceedings in order to 'contest' his liability for a tax. In Great Island Holding Corp., 5 T.C. 150, 160, we stated that: "We do not agree with petitioner's contention that the 'contested tax' rule is applicable only in cases where the dispute has been carried to the courts. In our view, it is sufficient if the taxpayer does not accrue the items on its books and denies its liability therefor. "The petitioner herein did not *116 accrue the tax in question on its books, nor can it fairly take the position that it did not deny its liability for any additional tax when it claimed the benefit of the deduction for post-war reconversion expense. The additional tax which petitioner now seeks to accrue and deduct in the fiscal year 1944 was not the result of innocent error or oversight on the part of the petitioner but was the direct result of its deliberate and affirmative claim to a deduction in the amount of $253,774.13. The petitioner, with clarity and in all apparent sincerity, claimed the deduction on its state tax return, which had the practical effect of denying tax liability in any greater amount than reported. It is of no moment now to learn that petitioner's officers had been forewarned as to the unlawfulness of the deduction or that they were unwilling to press the claim should it be disallowed, for these facts were in no manner reflected on the returns. The important considerations are that the deduction and the resulting lower tax were in fact claimed and that at no time prior to the filing of its amended return on November 30, 1946, did the petitioner in any manner recognize or concede its liability *117 for taxes in any greater amount than originally reported and paid." In the instant case, the deductions and the resulting lower tax were in fact claimed by petitioner on its state tax return and at no time prior to October 12, 1957 did petitioner in any manner concede liability for state taxes for the year 1952 in any amount greater than originally reported and paid. In fact, although waiving its right to protest the additional assessment, it still does not concede the correctness of the bases on which the additional assessments were made. Following Gunderson Bros. Engineering Corp., supra, we hold that petitioner is not entitled to deductions for the taxable year 1952 for additional assessments of state taxes for that year. H. E. Harman Coal Corp., 16 T.C. 787 (April 18, 1951); and Gulf States Utilities Co., 16 T.C. 1381 (June 19, 1951), relied upon by petitioner, are distinguishable. In the Harman case the taxpayer, which was on the accrual basis, sought to deduct on its Federal income tax return for 1941 payment made in that year to the Commonwealth of Virginia in settlement of a deficiency in state income taxes for 1938 and 1939. The *118 deficiency was determined in 1941 as a result of certain adjustments similar to those made by respondent in 1940 with respect to the taxpayer's Federal income tax liability for 1938 and 1939. This Court disallowed the deduction claimed. In that case neither the state nor the Federal deficiencies were contested. In the instant case adjustments made by respondent to the petitioner's Federal income tax return are being contested, and although petitioner has filed a waiver of its right to protest the additional state tax assessment, its accountant testified that it does not agree that the adjustments made are correct. The decision in the Gulf States Utilities Co. case was likewise reached after a finding that there had been no "contest" of the state tax liability. Respondent has determined that petitioner is liable for an addition to tax for negligence or intentional disregard of rules and regulations under section 293(a), Internal Revenue Code of 1939. Petitioner contends that its president, Conrad, relied completely upon the accountant DeVillers to correctly prepare the Federal income tax return of petitioner for the taxable year 1952 and that it is therefore not liable for an addition *119 to tax for negligence. Where a taxpayer follows the advice of a qualified public accountant conversant with tax matters in preparing his income tax return, this Court has held that a subsequent determination by respondent of additions to tax for negligence or intentional disregard of rules and regulations should not be sustained. Rhett W. Woody, 19 T.C. 350; R. E. Nelson, 19 T.C. 575. In the instant case, however, the evidence shows that petitioner's accountant, DeVillers, prepared the tax returns after receiving orders from Conrad as to the amounts to be deducted for expenses and bonuses. DeVillers had no responsibility for classifying any of petitioner's accounts. He was responsible only for posting the accounts to ledgers and drawing up statements. DeVillers testified that he relied completely on Conrad and his secretary and notations made by them on check stubs for information as to the nature of expense items and income items. He further testified that with regard to the year-end bonuses, he was reluctant to charge these amounts as deductible expenses for 1952 until directed to do so by Conrad. Nowhere in the record does it appear that DeVillers gave *120 advice which resulted in the understatement of petitioner's income for 1952. Respondent was correct in determining that a part of the deficiency was due to negligence or intentional disregard of rules and regulations. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *↩